J-A03043-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| TAYLOR PRICHETT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LILLIAN WEEKS AND FARMERS | : | No. 1295 EDA 2025 |
| INSURANCE | : | |

Appeal from the Order Entered May 8, 2025
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2019-06714

BEFORE: BOWES, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 3, 2026**

Appellant, Taylor Prichett, appeals from the order granting summary judgment in favor of remaining Appellee, Mid-Century Insurance Company ("Mid-Century").[1] Appellant argues that the trial court erred in granting summary judgment regarding her remaining two causes of action that allegedly both arise from Mid-Century's insurance coverage of a motor vehicle accident invoking: (1) the insurance bad faith statute, *see* 42 Pa.C.S. § 8371; and (2) the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), *see* 73 P.S. § 201-9.2 *et seq*, respectively. Upon careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] After reviewing the record, we observe that "Farmers Insurance" is incorrectly identified as an appellee in this lawsuit. Instead, Mid-Century has filed an appellee's brief and furthermore does not dispute that it is a proper defendant, below.

The initial motor vehicle accident occurred on October 9, 2017. *See* Complaint, 9/25/19, at ¶ 7-10. Appellant was a passenger in a vehicle owned by her family, but on that particular date, her friend, Lillian Weeks,[2] was driving that vehicle with the family's permission. *See id.* The family vehicle was covered by a Farmers Insurance automobile insurance policy (the "Policy") that was issued to Appellant's parents, with Mid-Century serving as underwriter. *See* Mid-Century Answer, 6/9/20, Exhibit A (Policy).[3]

The trial court summarized both the facts and procedural history as follows:

> On September 25, 2019, Appellant filed a complaint against Appellees[.] [] Weeks rear-ended another vehicle while driving a vehicle owned by Appellant's family. Appellant was a passenger in the vehicle, and she asserts that she sustained various injuries including neck and shoulder pain with radiation to the hand, right ankle pain, right recurrent insertional Achilles tendinosis, right Haglund calcaneal exostosis, right personal subluxation, right split tear of peroneus brevis, and physiological trauma. At the time of the accident, the vehicle was insured pursuant to [the P]olicy [] which provided liability coverage of up to $100,000[.00] per person and $300,000[.00] per accident. As [] Weeks had

---

[2] Weeks was a named defendant in this suit; however, she ultimately settled with Appellant. *See* Motion for Summary Judgment, 2/27/24, Exhibit H (Settlement Agreement & Release) at 3 (unpaginated) (releasing Weeks from suit and paying Appellant $100,000.00).

[3] Mid-Century is the "insurer" in this case, which is defined by the Pennsylvania Insurance Department Act of 1921 as "any person who is doing, done, purports to do or is licensed to do an insurance business, and has been subject to the authority of, or to liquidation rehabilitation, reorganization or conservation by an insurance commissioner." 40 P.S. § 221.3.

permission from Appellant to use the vehicle, there is no dispute that she was insured for liability coverage under the [P]olicy.

Immediately following the accident, Mid-Century asked Appellant to submit medical records and to keep Mid-Century updated on her injuries and treatment. [Mid-Century] also took a recorded statement from Appellant, who stated that she had not hit anything inside the vehicle and did not mention an ankle injury. On January 12, 2018, Appellant advised Mid-Century that she had retained counsel. From January 18, 2018, until the instant-matter was filed, Mid-Century made repeated requests for records and other supporting documentation of Appellant's injuries. All requests were either ignored or only complied with partially. However, Appellant, through counsel, made it clear to Mid-Century that she would be seeking the $100,000[.00] policy limits as well as $100,000[.00] pursuant to underinsured motorist coverage.

Mid-Century reviewed the limited documentation provided by Appellant and concluded that, without the additional, pertinent requested records, it could only offer Appellant $11,983.00. On September 5, 2019, Appellant rejected that offer. Mid-Century again renewed its previous requests for documentation of Appellant's injuries and treatment. However, instead of responding to Mid-Century's requests or providing the requested documentation, Appellant filed suit on September 25, 2019.

On April 20, 2021, after Mid-Century had received and reviewed Appellant's discovery responses, Mid-Century offered Appellant the $100,000[.00] liability coverage on behalf of [] Weeks. On June 8, 2021, Appellant released [] Weeks from liability after Mid-Century's payment of $100,000[.00].

On February 27, 2024, Mid-Century filed a motion for summary judgment stating that Appellant no longer had a claim as she was paid the policy limits of the liability coverage and that Appellant does not qualify for underinsured motorist coverage under the [P]olicy. On March 25, 2024, Appellant filed a response to the motion for summary judgment. On April 9, 2024, Mid-Century filed a response to Appellant's response. On May 8, 2024, th[e trial c]ourt entered an order denying Mid-Century's motion [for summary judgment]. On June 5, 2024, Mid-Century filed a motion for reconsideration or appellate certification[,] and Appellant submitted her response on June 27, 2024. Th[e trial] court held oral argument on July 8, 2024, and July 31, 2024, [and] issued

- 3 -

an order denying the motion for reconsideration or appellate certification without prejudice before the assigned trial judge upon completion of discovery.

On April 16, 2025, Mid-Century again filed a motion for summary judgment as the matter was listed for trial in May of 2025. On April 28, 2025, Appellant filed her response. On May 7, 2025, th[e trial] court granted Mid-Century's motion for summary judgment.[4]

Trial Court Opinion, 7/21/25, at 1-3 (unnecessary capitalizations omitted and brackets added).

Appellant filed a timely notice of appeal, and she and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. *See* Notice of Appeal, 5/18/25; Rule 1925(b) Order, 5/19/25; Rule 1925(b) Statement, 6/5/25; Trial Court Opinion, 7/21/25.

On appeal, Appellant raises six questions challenging the trial court's order granting summary judgment on her two remaining claims:

1. Whether the [trial c]ourt had the authority under the ["]law of the case["] doctrine to grant summary judgment after previously ruling in [Appellant]'s favor at least six times on the exact same issues?

2. Whether [Mid-Century] owes a contractual duty of good faith and fair dealing toward its insured irrespective of first party or third[-]party claim?

3. Whether the fact that [Appellant], the insured, was in the passenger seat, not driving, deprives her of fiduciary status with the insurer under Pennsylvania law?

4. Whether the fact that the insurance adjuster violated multiple provisions of the Unfair Insurance Practices Act [("UIPA")], 40

_____

[4] The trial court's order was a final order disposing of all claims of all parties. *See* Pa.R.A.P. 341(a).

- 4 -

Pa.C.S. [§] 1171.1 *et seq*, specifically Section 1171.5(a) (10)(i), (iii), (iv), (vi), (vii) and (xiv), constitutes sufficient predicate for a bad faith claim under either contractual bad faith or statutory bad faith [pursuant to 42 Pa.C.S. § 8371]?

5. Whether an insurance adjuster's actions in bad faith violate [the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-9.2 *et seq*.]?

6. Whether the [trial c]ourt applied the correct standard for summary judg[]ment, that "there is no genuine issue of any material fact as to a necessary element of a cause of action" to any of the issues raised in [1-5], above?

Appellant's Brief at 2-3 (brackets added; unnecessary capitalization omitted).

The appellate standard of review from the grant of a motion for summary judgment is well-settled:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting ... summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Erie Ins. Exch. v. Eachus***, 306 A.3d 930, 932-33 (Pa. Super. 2023) (citation omitted).

In issue one, Appellant argues that the trial court did not have authority to grant summary judgment pursuant to the "law of the case" doctrine. ***See*** Appellant's Brief at 34-38. She asserts that the legal issues to which the trial court granted summary judgment "were repeatedly raised by defense since 2019 and were summarily rejected." ***Id.*** at 34. Appellant listed the following

"rejections" by the trial court: (1) Mid-Century's preliminary objections were overruled; (2) Mid-Century moved for reconsideration of the overruled preliminary objections "which was abandoned"; (3) Appellant served interrogatories and a request for discovery to Mid-Century; (4) Mid-Century moved for judgment on the pleadings, which was denied; (5) Mid-Century was ordered to provide an interrogatory and produce all documents requests; and (6) Mid-Century refused to provide discovery and only provided it after a sanctions hearing was held. *See id.* at 34-35.

Appellant contends that because the listed "rejections" were "resolved in her favor multiple times prior to the grant of summary judgment," the law of the case, as a legal principle, has been conclusively established. Appellant's Brief at 36. Moreover, "given [the trial court's] involvement in issuing the set of [o]rders[,] the [trial court] was familiar with the issues in the case." *Id.* at 36. We disagree that Appellant is entitled to relief.

Preliminarily, we explain the law of the case doctrine:

The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter.… The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy … but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the court of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

*Neidert v. Charlie*, 143 A.3d 384, 390-91 (Pa. Super. 2016) (citing

*Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa. Super. 2005))

(ellipses in original).

> The law of the case doctrine comprises three rules:
>
> (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.[5]

*Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 282 (Pa. Super.

2016) (citing *Commonwealth v. Starr*, 664 A.3d 1326, 1331 (Pa. 1995)).

To determine whether the law of the case doctrine applies, our Court

must examine the rulings at issue in the context of the procedural posture of

the case. *See Stein v. Magarity*, 102 A.3d 1010, 1017 (Pa. Super. 2014)

("In deciding whether to apply the coordinate jurisdiction rule, the Court must

look at the context of the procedural posture of the case[.]").

Here, the coordinate jurisdiction rule would be the only rule applicable

to this matter because there has been no remand or second appeal in this

case. Simply stated, "judges of coordinate jurisdiction [presiding over] the

same case should not overrule each other's decisions." *Zane v. Friends*

*Hosp.*, 836 A.2d 25, 29 (Pa. 2003). Further, we find that the coordinate

_____

[5] This third rule is referred to as the coordinate jurisdiction rule.

jurisdiction rule does not apply because the trial court's May 8, 2025 order granting summary judgment for Mid-Century and all other prior rulings were made by the *same* judge.[6] As there was no transfer of this case between trial judges, the coordinate jurisdiction rule does not apply. ***See Mariner Chestnut Partners, L.P.***, 152 A.3d at 282. Therefore, we find Appellant's first issue is meritless.

We address Appellant's second and third issues together because she presents "a two-pronged approach," which, in her words, provide discrete bases for her to "overcom[e]" summary judgment. Appellant's Brief at 4. Appellant asserts that Mid-Century owed her both an independent common law contractual duty of good faith and fair dealing and a fiduciary duty to the same effect. ***See id.*** She argues that Mid-Century's insurance adjuster did not negotiate her settlement claims in good faith. ***See id.*** at 10-11 (stating Appellant was only offered $11,983.00 as settlement before filing suit).

Specifically, Appellant contends that, contractually, because she is an insured under the Policy, she was owed a "heightened" duty of good faith and fair dealing by Mid-Century. ***See*** Appellant's Brief at 4, 10. In support, Appellant cites to ***Empire Fire & Marine Ins. Co. v. Jones***, 739 F.Supp.2d

_____

[6] ***See*** Order (granting motion for summary judgment), 5/7/25; Order (denying motion for reconsideration or appellate certification), 7/31/24; Order (denying motion for summary judgment), 5/9/24; Order (overruling motion for judgment on the pleadings), 12/2/20; and Order (overruling preliminary objections), 5/1/20.

746, 767 (M.D. Pa. 2010)[7], for the proposition that "[t]he insurer [here, Mid-Century,] by reason of its monopoly on adjusting the case, must provide an honest, intelligent[,] and objective evaluation." Appellant's Brief at 10. Appellant maintains that this obligation exists both in response to first party and third-party claims. *See id.* at 11, 20. ("The right to handle and process claims is not limited to first party claims, but to *any* claims made.") (emphasis in original). She further asserts that, because she had no recourse other than the insurer's adjuster to evaluate her claim, Mid-Century's adjuster failed to meet the required standard of good faith and fair dealing. *See id.* at 11.

Moreover, Appellant argues that "a higher status of fiduciary [duty] applies to all insureds." Appellant's Brief at 11. She points to *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 322 (Pa. 1963), for the argument that "by asserting the policy right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured." Appellant's Brief at 19-20. Additionally, Appellant quotes *Birth Ctr. v. St.*

_____

[7] "While we recognize federal district court cases are not binding on this [C]ourt, Pennsylvania appellate courts may utilize the analysis in those cases to the extent we find them persuasive." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 n.26 (Pa. Super. 2011). Here, we find that *Empire Fire* is unpersuasive because Appellant's cited portion concerns Section 8371 and not her common law claims concerning a duty of good faith and fair dealing and fiduciary duty. *See Empire Fire & Marine Ins. Co.*, 739 F.Supp.2d at 767, 769 (finding defendant is third-party claimant and not entitled to a cause of action for bad faith under Section 8371).

*Paul Comp., Inc.*, 787 A.2d 376, 386 (Pa. 2001), as follows: "where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches [a] contractual duty to act in good faith and its fiduciary duty to its insured." Appellant's Brief at 14.

Finally, Appellant contends that third-party bad faith causes of action were first recognized by our Supreme Court in *Cowden v. Aetna Cas. Ins. Co.*, 134 A.3d 223 (Pa. 1957). *See* Appellant's Brief at 24 ("[In *Cowden*,] Pennsylvania joined the majority of jurisdictions in recognizing that a liability insurer's conduct in handling a third-party claim could give rise to a bad faith claim against the insurer."). Appellant cites to *Birth Center* for the proposition that "contractual bad faith was explicitly accepted as law in Pennsylvania and allowed for extra contractual, consequential, compensatory damages." *Id.* (citing *Birth Ctr.*, 787 A.2d at 376.). Overall, Appellant argues that the trial court incorrectly ruled that Mid-Century did not owe Appellant a duty of good faith and fair dealing as well as did not owe her a fiduciary duty. *See id.* at 39-40.

Our resolution of issues two and three involves the interpretation of the Policy to determine the scope of Mid-Century's duty to Appellant. Our standard of review for cases involving policy interpretation is *de novo* and the scope is plenary. *See Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (citation omitted). An insurance policy is a contract, and our interpretation of an insurance policy is to ascertain the intent of the parties "as manifested by the language of the written instrument." *Kramer v.*

- 10 -

*Nationwide Prop. & Cas. Ins. Co.*, 313 A.3d 1031, 1039 (Pa. 2024) (citation omitted). "[W]e are not bound by the trial court's conclusions of law, but may reach our own conclusions." *Kline v. Travelers Personal Sec. Ins. Com.*, 223 A.3d 677, 686 (Pa. Super. 2019) (citation omitted).

Appellant, in her complaint, sought recovery both under the Policy's liability coverage section and underinsured motorist ("UIM") coverage section. *See* Complaint, 9/25/19, at ¶ 41-42. Under Part I of the liability coverage section of the Policy, it states that Mid-Century "will pay for damages for which any insured person is legally liable because of bodily injury to any person" arising out of the use of an insured vehicle and "will defend an insured person against any covered suit. Policy at 4. The Policy defines an "Insured Person" to include "any person using your vehicle." *Id.*

Part II of the Policy provides that Mid-Century will pay UIM benefits to "an insured person who is legally entitled to recover damages from the owner or operator of an underinsured motor vehicle because of bodily injury." Policy at 6. However, the Policy expressly excludes from the definition of an underinsured motor vehicle a vehicle "owned or furnished for frequent or regular use of an insured person or any member of the household of an insured person" and "any vehicle … to which coverage under Part I applies." *Id.* at 6-7. Further, under the Policy's Part III—the first party benefits coverage section—states that Mid-Century, "will pay … the Basic First Party Benefit to or for an insured person who sustains bodily injury. The bodily injury must be

caused by an accident arising out of the maintenance or use of a motor vehicle." Policy at 10.

Here, it is undisputed that Weeks was permissively operating the insured vehicle at the time of the accident and caused bodily injury to Appellant. ***See*** Complaint, 9/25/19, at ¶ 7, 12. Therefore, Weeks was insured with respect to the defense and payment of Part I of the liability coverage arising from the accident. ***See*** Policy at 4. Pursuant to Part II of the Policy, Mid-Century did not owe Appellant UIM benefits because her family's vehicle fell within the vehicle exclusion provision. ***See id.*** at 7.

Turning to Part III of the Policy, Appellant is an insured because she is a "family member" and was the one that sustained bodily injury in the accident. ***See id.*** at 10; Complaint, 9/25/19, at ¶ 12. Consistent with that section, Appellant received the limit of her first party medical benefits under the Policy as payment against Weeks, the tortfeasor, during the course of litigation. ***See*** Policy at 17 (stating bodily injury limit is $100,000.00 each person); Settlement Agreement & Release at 3 (unpaginated). In conclusion, although Appellant qualified for purposes of the first party medical benefits and received those benefits under the Policy, she was *not* an insured under the liability coverage section and was not entitled to UIM coverage based on the vehicle involved and her status as a passenger. ***See*** Policy at 4, 6-7, 10.[8]

_____

[8] Appellant conceded her UIM coverage claim on appeal. ***See*** Appellant's Brief at 9.

Importantly, our Court has held that:

[T]he duty to negotiate a settlement in good faith arises from the insurance policy and is owed to the insured, not to a third-party claimant. By asserting its policy right to handle all claims, the insurer assumes a fiduciary position toward the insured and becomes liable to act in good faith and with due care in representing the interests of the insured.

*Brown v. Candelora*, 708 A.2d 104, 108 (Pa. Super. 1998) (citing *Strutz v. State Farm Mut. Ins. Co.*, 609 A.2d 569, 571 (Pa. Super. 1992)).

As explained in detail above, Appellant is third-party claimant and *not* an insured for the liability coverage provision of the Policy. *See supra* at 10-12. Furthermore, and importantly, Appellant did not assert a first party claim in her complaint. *See* Complaint at ¶ 48 (Appellant stating she sought coverage "pursuant to the third[-]party portion of the [Policy] as well as the UIM Section."). Accordingly, Appellant, as a third-party claimant, was not owed a duty of good faith and fair dealing or fiduciary duty under the liability coverage section of the Policy. *See Brown*, 708 A.2d at 108.

We find unpersuasive Appellant's argument that she was owed a "heightened duty" as a third-party for both her claims relating to the duty of good faith and fiduciary duty because she is not an insured under the Policy's liability coverage section. Regardless, our Court has held that a duty of good faith and fair dealing to an insured is the same, regardless of party status. *See Zappile v. Amex Assur. Co.*, 928 A.2d 251, 256 (Pa. Super. 2007) (citing *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378 (Pa. Super. 2002)). "The insurer's duty of good faith is contractual, arising from the

insurance company's assumption of fiduciary status via the policy's provisions affording the insurer the right and responsibility to handle claims and control settlement." *Petty v. Hosp. Serv. Ass'n of Ne. Penn.*, 23 A.3d 1004, 1014 (Pa. 2011) (citing *Gray v. Nationwide Mut. Ins. Co.*, 223 A.2d 8, 11 (Pa. 1966).

Moreover, Appellant's cited authority does not establish she is owed a duty because these cases stand for the proposition that insurers owe a duty to an insured. In *Gedeon*, *Cowden*, and *Birth Center*, the plaintiffs sought to enforce duties arising from the insurers' contractual obligation to settle, defend, or otherwise protect the interests of an insured. *See Gedeon* at 188 A.2d at 231-22 (describing obligations undertaken by insurer, as to indemnify against liability and to defend insured against suits arising under the policy); *Birth Ctr.*, 787 A.2d at 389 (involving failure to settle third-party claim against insured and contemplated duty owed to insured); *Cowden*, 134 A.3d at 229 (holding that insurer's duty of good faith in settlement negotiations is owed to its insured). Here, Appellant only raised claims in her complaint in connection with the handling of the third-party and UIM claims; nevertheless, she erroneously sought to impose duties upon Mid-Century in connection with her third-party liability claim. Therefore, we agree with the trial court that Appellant failed to allege a genuine dispute of material fact that Mid-Century owed a duty of good faith and fair dealing as well as a fiduciary duty to Appellant, both with respect to her third-party claim and her UIM claim. *See* Trial Court Opinion, 5/7/25, at 5-6; *Erie Ins. Exch.*, 306 A.3d at 932-33.

- 14 -

In issue four, Appellant argues that Mid-Century's insurance adjuster violated multiple provisions of the UIPA, specifically Sections 1171.5(a)(10)(i), (iii), (iv), (vi), (vii) and (xiv), and therefore, these violations were sufficient for a claim under Pennsylvania's insurance bad faith statute. *See* Appellant's Brief at 26-30; 42 Pa.C.S. § 8371 (permitting court to award interest, punitive damages and attorney fees).[9] "[A]n action under Section 8371 is distinct from the common law cause of action for breach of the contractual duty of good faith." ***Ash v. Cont'l Ins. Co.***, 932 A.2d 877, 884 (Pa. 2007); ***see also Hollock v. Erie Ins. Exch.***, 842 A.2d 409, 414 (Pa. Super. 2004) (*en banc*) (stating our Court considers whether conduct of insurers "arises under an insurance policy[.]").

Upon review, we find that ***Seasor v. Liberty Mut. Ins. Co.***, a Pennsylvania federal district court case, is persuasive when applied to the facts in this case. ***See Seasor***, 941 F.Supp. 488 (E.D. Pa. 1996) (applying Pennsylvania law). In ***Seasor***, nineteen passengers in a rental vehicle were injured by an accident. ***See id.*** at 489. Pursuant to the rental company's policy, passengers qualified as insureds for first party medical benefits. ***See id.*** The insurer settled liability claims against the driver and sixteen other

_____

[9] Our Court has held that the UIPA does not create a private cause of action. ***Cresswell v. Pennsylvania Nat. Mut. Cas. Ins. Co.***, 820 A.3d 172, 180 n.4 (Pa. Super. 2003) (citation omitted). However, conduct that constitutes a violation of the UIPA may be considered when determining whether an insurer acted in bad faith under Section 8371. ***See id.***

passengers in the vehicle except for three passengers ("plaintiffs"). *See id.* at 490.

Then, plaintiffs instituted a negligence claim against the driver, and a jury returned a verdict in favor of plaintiffs. *See Seasor*, 941 F.Supp. at 490. After the verdict was entered as judgment against the driver, plaintiffs began pursuing assignment of rights from the driver. *See id.*[10] Plaintiffs sued the insurer pursuant to Section 8371 because the insurer failed to include them in the settlement of liability claims against the driver. *See id.* The insurer filed a motion for summary judgment contending that plaintiffs were not "insured" via the liability coverage section of the policy pursuant to Section 8371. *See id.* The insurer acknowledged that the permissive driver qualified as an insured pursuant to the policy's liability section but disagreed with plaintiffs' assertions that they were insured pursuant to the liability section. *See id.*

The *Seasor* court granted the motion for summary judgment and held that plaintiffs' qualifications as insureds for first party medical benefits did not grant them insured status under the liability coverage section. *See Seasor*,

_____

[10] We note that in *Seasor* the driver assigned an entitlement for plaintiffs to assert damages against the insurers without their consent. *See Seasor*, 941 F.Supp. at 490. However, the *Seasor* court inaccurately predicted that the Pennsylvania Supreme Court would not uphold the assignment of bad faith cause of action without an insurer's consent. *Compare Seasor*, 941 F.Supp. at 493-94 with *Allstate Prop. & Cas. Ins. Co. v. Wolfe*, 105 A.3d 1181, 1188 (Pa. 2014) ("[T]he entitlement to assert damages under Section 8371 may be assigned by an insured to an injured plaintiff and judgment creditor[.]"). Upon review, we find the record shows that Appellant is not a judgment creditor and did not obtain an assignment from Weeks.

941 F.Supp. at 492 ("It would require a great stretch of judicial imagination to conclude that plaintiffs who brought a negligence action against [driver], the 'insured' under the policy, should also be considered 'insureds' under the liability coverage section of the policy."). The **Seasor** court relied on our decision in **Strutz**, which found that the duty to negotiate a settlement in good faith arises from the insurance policy and is *not* owed to a third-party claimant. **See id.** at 491 (quoting **Strutz**, 609 A.2d at 571).

The facts of this case are parallel to the facts in **Seasor** because Appellant received first party medical benefits but nevertheless argues that she is an insured pursuant to the liability coverage section of the Policy. **Compare** Appellant's Brief at 10-11; Policy at 10 **with Seasor**, 941 F.Supp. at 489-90. Further, Appellant sued Weeks, the permissive driver, for negligence and asserted a bad faith statutory claim against Mid-Century. **See** Complaint at ¶ 38 **with Seasor**, 941 F.Supp. at 490. Like the insurer in **Seasor**, Mid-Century argued in its motion for summary judgment that Appellant was not an insured under the liability coverage provision of the Policy. **Compare** Motion for Summary Judgment, 2/27/24, at ¶ 14-18 with **Seasor**, 941 F.Supp. at 490. Moreover, the trial court, like the **Seasor** court, granted summary judgment for Mid-Century because Appellant was not an insured and therefore Mid-Century did not owe a duty. **Compare** Trial Court Opinion, 5/7/25, at 5-6 **with Seasor**, 941 F.Supp. at 492. Accordingly, because Appellant was not third-party insured under the liability coverage section of the Policy, she does not have standing to pursue a claim under

- 17 -

Section 8371. Thus, we will not conduct a substantive analysis of bad faith and Appellant's fourth issue has no merit.[11]

In issue five, Appellant alleges that Mid-Century's insurance adjuster's bad faith actions violated the UTPCPL. **See** Appellant's Brief at 33-34.[12] Appellant argues that Pennsylvania courts have "approved use of insurer violations of other insurance-related and consumer statutes as evidence of insurer bad faith." **Id.** at 26 (citing **Employers Mut. Cas. Co. v. Loos**, 476 F. Supp. 2d 478 (W.D. Pa. 2007)); **Berg v. Nationwide Mut. Ins. Co.**, 189 A.3d 1030 (Pa. Super. 2018)). Further, Appellant admits that the UIPA does not provide a cause of action for individuals; however, she argues a violation of Section 8371 "constitutes a finding of deceptive business practices and works in conjunction" with the UTPCPL. **Id.** at 30, 34. We find no relief is due.

---

[11] Although **Seasor** was decided nearly thirty years ago, its reasoning has not been undermined by subsequent Pennsylvania authority and has been cited favorably by later federal courts applying Pennsylvania law. **See Williams v. State Farm**, 2021 WL 2661615, at *3 (E.D. Pa. 2021) (non-precedential) ("Pennsylvania law makes clear that the insurer's duty to act in good faith belongs to those who qualify as 'insureds' under the policy.") (**Seasor**, 941 F.Supp. at 490); **Norco v. Allstate Ins. Co.**, 2012 WL 12887729, at *8 (W.D. Pa. 2012) (non-precedential) ("Under the terms of the insurance policy in **Seasor**[, 941 F. Supp. at 492], although the passengers qualified as 'insureds' for first party benefits, the court found that they did not meet the definition of 'insureds' for liability coverage.").

[12] To establish a claim under the UTPCPL, a plaintiff must prove: (1) he or she purchased or leased goods or services; (2) the goods or services were primarily for personal, family, or household purposes; and (3) the plaintiff suffered an ascertainable loss because of the defendant's unlawful, deceptive act. 73 P.S. § 201–9.2(a).

We first note that this claim was properly dismissed because our Court has specifically found that while the UTPCPL applies to the sale of an insurance policy, it does *not* apply to the handling of insurance claims. *See Wentz v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 550-51 (Pa. Super. 2020) ("The UTPCPL applies to consumer transactions, which are statutorily defined; the *handling* of an insurance claim does not meet the statutory definition.") (emphasis added). Here, Appellant only contends that Mid-Century acted in bad faith in handling her claims but offers no other argument. *See* Appellant's Brief at 33-34.

Further, Appellant's reliance on *Loos* and *Berg* are misplaced. *Loos*, a federal district court case, clarifies that every violation of the UIPA does not constitute *per se* bad faith within the meaning of Section 8371. *See Loos*, 476 F.Supp.2d at 495. In fact, *Loos* does not mention *any* consumer fraud statutes. *See id.* Also, Appellant's reliance on *Berg* is inapposite, as the case involved an insurer-insured relationship and held only that UTPCPL violations may be considered evidence of bad faith under Section 8371. *See Berg*, 189 A.3d at 1164. *Berg* provides no support for the proposition that the UTPCPL, standing alone, gives rise to a cause of action for bad faith conduct by an insurer. *See id.* at 1130. Therefore, we find Appellant's fifth issue is meritless.[13]

_____

[13] In Appellant's reply brief, she asserts that Mid-Century's argument is "presented incorrectly" because *Gregg v. Ameriprise Financial, Inc.*, 245
*(Footnote Continued Next Page)*

In issue six, Appellant avers that the trial court applied the incorrect standard for summary judgment because it found that there was no genuine issue of material fact outstanding in this case. *See* Appellant's Brief at 17-19. Although Appellant states that the trial court applied the incorrect standard for summary judgment, in her appellate brief she *admits* that the court applied the correct standard. *See id.* at 17. Therefore, we find no relief is due.

Notwithstanding Appellant's admission to the court's proper use of the correct summary judgment standard, Appellant also redundantly challenges the trial court's determination that she was not an insured under the Policy for her third-party liability claim against Weeks. *See* Appellant's Brief at 18-19. Moreover, she reiterates that Mid-Century owed a contractual duty of good faith and fair dealing as well as statutory duties. *See id.* at 19. As explained in detail above, we have reviewed the record, and Appellant's claims must fail because there is no genuine dispute of material fact. *See Erie Ins. Exch.*, 306 A.3d at 932-33. Appellant is not an insured pursuant to the liability coverage section of the Policy because her claims raised on appeal are

---

A.3d 637 (Pa. 2021), and *Dwyer v. Ameriprise Financial, Inc.*, 313 A.3d 969 (Pa. 2024), "recast" the UTPCPL and specifically changed "the proofs required to show [a] violation." Appellant's Reply Brief at 2. Essentially, Appellant contends that *Gregg* and *Dwyer* support the argument that our Court should construe the UTPCPL liberally and that the Policy is a consumer transaction within the meaning of that law. *See id.* at 3-6. However, our Court has continued to hold that the UTPCPL does not apply to insurance companies with respect to claim mishandling. *See Winner v. Progressive Adv. Ins. Co.*, 345 A.3d 750, 758 (Pa. Super. 2025). Accordingly, Appellant's reply brief argument is unpersuasive.

factually limited. **See supra** at 10-12. Therefore, Appellant's sixth issue is wholly meritless.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/3/2026